IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AARON DALE EATON**,<br><br>        Plaintiff,<br><br>    v.<br><br>**T. BLEWETT**, *et al.*,<br><br>        Defendants. | Case No. 2:20-cv-1641-SI<br><br>**OPINION AND ORDER** |

Katharine Edwards, LAW OFFICE OF KATHARINE EDWARDS, P.O. Box 417, Hillsboro, OR 97123. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Attorney General, Shannon M. Vincent, Senior Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Aaron Dale Eaton (Eaton), an adult in custody at Two Rivers Correctional Institution (TRCI), originally filed this action representing himself. He alleged that multiple defendants violated his First, Fourteenth, and Sixth Amendment rights by confiscating his legal mail, specifically, a stamped envelope preaddressed to legal counsel, and providing an insufficient prison grievance procedure. Defendants moved to dismiss and for summary judgment against Eaton's claims on several grounds. The Court granted Defendants' motion to dismiss all claims except Eaton's First Amendment claim for confiscating his legal mail, and the Court granted summary judgment to Defendants on that claim based on Eaton's failure to

exhaust administrative remedies. *Eaton v. Blewett*, 2021 WL 3559462 (D. Or. Aug. 11, 2021), *vacated in part and remanded*, 50 F.4th 1240 (9th Cir. 2022). Eaton appealed the Court's summary judgment decision. On appeal, Easton was represented by counsel. The Ninth Circuit vacated the Court's judgment, reversed in part the court's opinion, and remanded for further proceedings. *Eaton v. Blewett*, 50 F.4th 1240 (9th Cir. 2022). The Ninth Circuit vacated the Court's summary judgment opinion, concluding that TRCI's grievance procedure was effectively unavailable for Eaton to exhaust his administrative remedy for his First Amendment claim based on the confiscation of his legal mail, and remanded for further proceedings on that claim. *Id.* at 1245-47.

After remand, Easton continues to be represented by counsel. His only remaining claim asserts that Defendants Tyler Blewett, Tonia Ridley, and John Vanderwalker violated Eaton's First Amendment rights by confiscating his legal mail. Defendants again move for summary judgment. Defendants argue: (1) summary judgment is warranted on the claim against Superintendent Blewett because he was not personally involved in the confiscation of Eaton's legal mail and supervisory liability is not allowed under 42 U.S.C. § 1983; (2) summary judgment is warranted on Eaton's claim against Ms. Ridley and Officer Vanderwalker because their actions did not violate Eaton's First Amendment rights; and (3) all Defendants are entitled to qualified immunity. For the reasons that follow, that Court grants in part Defendants' motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

On July 24, 2020, Defendant Tonia Ridley sent an email to TRCI security and mailroom staff, stating:

> The mailroom is seeing a rash of prepaid postage envelopes being mailed out. When you inspect legal mail, you are allowed to search for contraband in the presence of the AIC, but you shouldn't read the mail.
>
> Examples of contraband are prepaid postage envelopes, stamps, blank envelopes, bookmarks and blank paper or postcards

ECF 86-2 at 1.

After Eaton submitted grievances about the confiscation of his legal mail, highlighting that his preaddressed and stamped envelope to his attorney was confiscated, Ms. Ridley issued a follow-up email on August 17, 2020, stating:

> I need to make one correction to my previous e-mail. We do allow AIC's to receive an envelope that is addressed to an attorney with a metered stamp and return address of the AIC's name. These envelopes are intended to provide a quick turnaround for legal work only. I apologize for the confusion.

*Id.*

Eaton alleges in his Second Amended Complaint (SAC) (ECF 41) that on July 27, 2020, he received an item of mail from a law firm. The mailing included a preaddressed, postage-paid return envelope to the law firm. Eaton contends that the mailing was a form for him to respond, by the law firm's deadline, to participate in their representation of clients in the Boy Scouts of America (BSA) abuse litigation. ECF 90-2 at 3; SAC at 5. Eaton alleges that Defendant Vanderwalker, a correctional officer at TRCI, confiscated the preaddressed, stamped envelope. *See, e.g.* SAC at 3-4 ("[O]fficer Vanderwalker took the envelope and issued a confiscation slip to Mr. Eaton, (see exhibit attached.) and the confiscating of this legal envelope stopped Mr. Eaton from being able to file a claim concerning the Boy Scouts Of America suit[] that is currently in federal court, and advertised all over T.V."); *id.* at 4 ("How does a pre-paid envelope violate law? . . . How does a[] legal envelope provided from my lawyer create a security threat to TRCI? (see exhibit attached)").[1]

The allegations in the SAC assert that Officer Vanderwalker opened the legal mail in Eaton's presence and told him that Officer Vanderwalker had to confiscate the *envelope* because "Ms. Ridley has issued an email to confiscate all incoming prestamped legal envelopes." SAC at 3; *see also id.* ("Officer Vanderwalker opened [Eaton's] legal mail and saw the envelope . . . . Officer Vanderwalker took the envelope and issued a confiscation slip to Mr. Eaton . . . and the confiscating of this legal envelope" caused Eaton's harm).

---

[1] The SAC does not attach any exhibits, but Eaton's original Complaint, ECF 2, contained attachments. It appears that Eaton intended to continue to incorporate his original attachments into his amended complaints. His original attachments included his grievances and grievance responses and Officer Vanderwalker's "Shakedown Report" that identified the "unauthorized article" and attached a photocopy. ECF 2 at 9-15. In Eaton's grievances relating to the confiscation of his "legal material," he identified the subject material as his "envelope." *Id.* at 11, 13. Officer Vanderwalker also identified the "unauthorized article" as a "return envelope" and the attached photocopy is only of an envelope. *Id.* at 14-15.

In response to Defendants' motion for summary judgment, however, and with the assistance of counsel, Eaton submits a declaration stating that he received a "notice" from Officer Vanderwalker that his legal mail had been confiscated, and that both the envelope *and* the letter had been confiscated. ECF 90-2 at 2. Eaton explains that without the *letter or envelope*, he had no way of knowing how or where to contact the law firm that could have represented him in the BSA litigation, because his former girlfriend had found the law firm and Eaton had limited access to outside information. *Id.* at 2-3. He contends that by the time his legal mail was returned to him, the deadline had passed for him to respond to the law firm's request to "opt in" to their litigation efforts on behalf of clients in the BSA bankruptcy settlement, regardless of the bankruptcy court's deadline, and his subsequent efforts to obtain representation by the law firm were unsuccessful. *Id.* at 3-4.

Eaton also explains that his legal mail routinely was opened outside of his presence and that corrections personnel often commented on the contents of his legal mail. *Id.* at 2. Eaton submits multiple declarations by himself and others attesting to this problem. ECF 90-1 at 4-9, 18. He previously had moved in this case for a temporary restraining order on December 11, 2020, asserting, among other harms, that correctional officers routinely opened and read legal mail outside the presence of inmates, submitting in support of the motion many of the same declarations that he now submits. *See* ECF 20.

## DISCUSSION

Defendants move for summary judgment on three separate grounds: that Eaton fails to show Defendant Blewett is subject to supervisor liability; that Eaton fails to show a First Amendment violation by Ms. Ridley and Officer Vanderwalker; and that all three Defendants are entitled to qualified immunity. Each is addressed in turn.

**A.  Supervisor Liability of Defendant Blewett**

Defendants argue that summary judgment should be granted on Eaton's claim against Blewett because he was not personally involved in confiscating Eaton's legal mail and thus Eaton's claim amounts to *respondeat superior* liability. Eaton, however, contends that Blewett is responsible for his failure to train TRCI employees on proper legal mail handling.

To prevail on a claim of supervisory liability for failure to train, the plaintiff must show that the official "was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)); *see also Flores*, 758 F.3d at 1159. Absent a pattern of similar violations, failure to train "may amount to a policy of deliberate indifference if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quotation marks omitted); *see also Flores*, 758 F.3d at 1159-1160 (explaining that failure to train claims may be shown without a pattern of conduct in rare circumstances where "the unconstitutional consequences of failing to train . . . are so patently obvious").

Eaton's failure to train claim arises from the confiscation of his legal mail by Officer Vanderwalker, but to support this claim he points to a purported pattern of misconduct in handling legal mail. Eaton submits declarations signed in 2020 by himself and other inmates attesting to a purported pattern of misconduct by TRCI employees in opening legal mail and otherwise mishandling legal mail. Defendants contend that these are new "allegations" that were not contained in the SAC, are "rooted in hearsay," and were raised for the "first time" in

PAGE 6 – ORDER

response to Defendants' motion for summary judgment. The Court rejects all of these arguments as it relates to supporting Eaton's failure to train claim.

Eaton did not raise these arguments for the first time in response to Defendants' motion for summary judgment. Eaton made these same arguments and *submitted these same declarations* in this case in December 2020 when moving for preliminary injunctive relief. The Court considers this evidence as relevant to Eaton's failure to train claim, not as a basis for additional First Amendment claims. The evidence is permissible at summary judgment because the declarants could be called to testify at trial. *See Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."). The underlying hearsay statements to which the declarants attest are statements by TRCI employees, which are statements by a party opponent.

The Court is unpersuaded that Defendants are prejudiced by facing a failure to train claim that raises a pattern of conduct that previously was described by Eaton in his December 2020 filing with the Court. The specific act on which liability for this claim may be based remains Officer Vanderwalker's confiscation of Eaton's legal mail. There is no dispute that it was Tonia Ridley's email to the security staff that caused the confiscation of Eaton's legal mail and Eaton's alleged harm. Eaton has raised a genuine issue of fact as to whether Ms. Ridley was sufficiently trained on the proper procedure for handling legal mail. To determine whether Blewett may be liable for failure to train requires deliberate indifference, which looks to whether there was a pattern of conduct of mishandling legal mail. Eaton has provided sufficient evidence to raise a

PAGE 7 – ORDER

genuine issue of material fact regarding whether there was a pattern of conduct of improper handling of legal mail by officers at TRCI. The Court next analyzes whether Eaton raises an issue of fact that his First Amendment rights were violated as a result of that action, because without an underlying violation, Blewett may not be held liable as a supervisor.

## B. First Amendment Violation

Eaton alleges that Defendants violated his First Amendment rights. "It is well settled that the First Amendment protects the flow of information to prisoners . . . ." *Crofton v. Roe*, 170 F.3d 957, 959 (9th Cir. 1999), *as amended* (May 5, 1999). Additionally, "prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).

Defendants argue that Eaton fails to show that Ms. Ridley's email and Officer Vanderwalker's confiscation of Eaton's envelope infringed Eaton's First Amendment rights. First, Defendants argue that Ms. Ridley's email to security staff to confiscate all postage prepaid envelopes had a legitimate penological interest and thus passes constitutional review. Second, Defendants argue that Eaton's claim, as described in his response, is a "new" claim that was not alleged in the SAC and thus is an improper response to summary judgment. Third, Defendants argue that the underlying conduct is merely negligent and insufficient to support a First Amendment claim.

### 1. Legitimate Penological Interest

Regarding Defendants' first argument, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Several factors are relevant in determining the reasonableness of a prison's regulation: (1) whether there "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"

and whether that governmental objective was "neutral"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the presence or absence of "ready alternatives . . . that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 89-91 (quotation marks omitted).

Defendants argue that their policy of confiscating from legal mail postage prepaid envelopes *with an exception* for postage prepaid envelopes preaddressed to legal counsel, meets constitutional scrutiny, especially because Ms. Ridley later "clarified" her earlier email. But that policy is not what Ms. Ridley described in her original email. Ms. Ridley's original email banned *all* "prepaid postage envelopes" without making an exception for envelopes preaddressed to legal counsel. ECF 90-1 at 13. She later "corrected" (not "clarified") her email after Eaton grieved the confiscation of his legal material, setting out the exception for envelopes preaddressed to attorneys "to provide a quick turnaround for legal work" and apologizing for the "confusion." *Id.*

Ms. Ridley's first email, stating that all prepaid envelopes in legal mail are contraband without making an exception for envelopes preaddressed to legal counsel, did not have a legitimate penological interest for that subset of prepaid envelopes. Confiscating envelopes preaddressed to legal counsel does not serve the prison's legitimate penological interest of stopping the bartering of blank prepaid envelopes, which Defendants argue may lead to "a risk of gambling, theft, extortion, and violence in ODOC prisons." Defendants do not articulate a legitimate penological interest for banning prepaid envelopes preaddressed to legal counsel. Nor does allowing the purchase of blank envelopes serve as a sufficient alternative to counsel providing a preaddressed, stamped envelope for the quick turnaround of legal mail. There are

PAGE 9 – ORDER

many instances where an inmate may not be able to purchase a substitute envelope. And, as TRCI's policy allowing prestamped envelopes preaddressed to legal counsel shows, this accommodation does not have deleterious effect on guards, other inmates, or the prison's penological interests. The Court therefore rejects this argument as a basis for granting summary judgment on Eaton's First Amendment claim.

### 2. Alleged Conduct

Defendants next argue that in response to their summary judgment motion, Eaton improperly asserts new conduct not alleged in the SAC. Defendants argue that Eaton now contends that both his legal letter and the envelope were confiscated by Officer Vanderwalker, whereas his grievance and the SAC reference only the confiscation of the envelope. Eaton also now raises general misconduct relating to the handling of legal mail. Defendants argue that this improperly and materially changes Eaton's claim. Defendants also argue that these new claims are foreclosed because Eaton did not administratively exhaust this purported misconduct.

Eaton is represented by counsel and has been since February 17, 2023. Eaton did not file a motion to amend his complaint at any time after counsel appeared in this case. After Defendants filed their motion for summary judgment on October 30, 2023, Eaton also did not move to amend his complaint. Eaton thus is constrained to the claims stated in his SAC, and he does not assert a claim based on TRCI's general policy or practice of mishandling legal mail or opening legal mail outside the presence of inmates. Although the Court considers this evidence in the context of a pattern of conduct for deliberate indifference for supervisor liability, it is not allowable as conduct on which to base First Amendment liability. Nor did Eaton allege in the SAC any facts about his letter being confiscated along with the legal envelope or include that as a basis for his First Amendment claim.

Eaton was specific in the SAC that only the envelope was confiscated. He alleged that Officer Vanderwalker "saw the envelope" and "took the envelope," that the "confiscating of this legal envelope" caused him to miss the deadline to participate in the BSA litigation, and that there was no penological interest in TRCI "confiscating the legal material i.e. envelopes." SAC at 3. Adding that the letter also was confiscated does not merely add factual detail to his existing claim, it materially changes Eaton's claim. That the claim fails to allege harm as alleged in the SAC and may do so if the letter was part of the claim shows that inclusion of the letter makes a material difference. Failing to provide notice to Defendants in the SAC that Eaton also intended to base his First Amendment claim on the purported confiscation of the letter does not comply with Rule 8 of the Federal Rules of Civil Procedure, and Eaton may not now make such a material amendment to his claim in response to summary judgment. *See, e.g.*, *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (stating that the plaintiff "may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment"); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (stating that when allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court" (*overruled in part on other grounds by Apache Stronghold v. United States*, 95 F.4th 608 (9th Cir. 2024)); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990))). Defendants have been unable to conduct discovery on or otherwise defend against a First Amendment claim based on the purported confiscation of the letter. The Court concludes that Eaton may not raise this issue now to create an issue of fact for trial.

Eaton's claim is limited only to the confiscation of the envelope, as alleged in the SAC. Eaton fails to show a genuine issue of material fact that he was monetarily harmed by the confiscation of his legal envelope, given the availability of a substitute envelope for purchase. That, however, only forecloses his claim for money damages. Eaton may still seek nominal damages. *See, e.g.*, *Schneider v. County of San Diego*, 285 F.3d 784, 795 (9th Cir. 2002) ("Nominal damages are a purely symbolic vindication of a constitutional right, and are awarded regardless of whether the constitutional violation causes any actual damage." (cleaned up)); *George v. City of Long Beach*, 973 F.2d 706, 708 (9th Cir. 1992) ("In this Circuit, nominal damages must be awarded if a plaintiff proves a violation of his constitutional rights."). He also has requested declaratory and injunctive relief, which he may continue to pursue.

Because Eaton has raised an issue of fact regarding the legitimate penological interest of Ms. Ridley's email requiring the confiscation of preaddressed legal envelopes and Officer Vanderwalker's subsequent confiscation of Eaton's legal envelope, the Court grants partial summary judgment against Eaton's First Amendment claim based on the alleged conduct. The Court grants summary judgment against Eaton's claim for compensatory damages.

**3. Negligence**

Defendants' final argument challenging the substance of Eaton's First Amendment claim is that Eaton's allegations amount to no more than mere negligence and thus cannot sustain a constitutional claim. Defendants state that the Ninth Circuit has not addressed whether negligence can support a First Amendment claim in this context but argue that in other contexts negligence does not support a claim for a constitutional violation and the Court should not accept a negligence standard for a First Amendment claim. Eaton argues that Vanderwalker knew his conduct violated Eaton's constitutional rights and expressly acknowledged as much, but confiscated the envelope anyway, making the conduct more than merely negligent.

In establishing the contours of a prisoner's First Amendment right to correspondence with counsel, the Ninth Circuit emphasized the importance of protecting legal mail in the context of prisoner communications. *See Hayes*, 849 F.3d at 1208-11. The Ninth Circuit noted that in a case protecting such communications under the Sixth Amendment, "a single instance of a guard *reading* a prisoner's mail was sufficient to establish a violation." *Id.* at 1208 (emphasis in original). The court ultimately "agree[d] with the conclusion of the Sixth Circuit that two or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim" under the First Amendment. *Id.* at 1211 (cleaned up).

Based on the Ninth Circuit's emphasis regarding the importance of legal mail and its protections under the First Amendment and the issues of fact raised by Eaton, the Court declines to grant summary judgment on the basis that Defendants' conduct did not rise to the level of a constitutional violation as a matter of law.

## C.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It applies to nominal damages. *See Mendez v. County. of Los Angeles*, 897 F.3d 1067, 1073 (9th Cir. 2018). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts. And reasonableness of official action, in turn, must be assessed in light of the legal rules that were clearly established at the time the action was taken." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (cleaned up). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v.*

*Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Abbasi*, 582 U.S. at 152 (quotation marks omitted). To be clearly established, "[i]t is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Id.* (cleaned up). "The 'clearly established' requirement 'operates to ensure that before they are subject to suit, [government officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536

U.S. 730, 739 (2002)) (alteration in *Eng*). Thus, the key inquiry in determining whether an officer has qualified immunity is whether the officer had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation of the standard" as long as "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand"); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) ("Rather, the relevant question is whether 'the state of the law at the time gives officials fair warning that their conduct is unconstitutional.'" (quoting *Bull v. City & County of San Francisco*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc)). "[T]he specific facts of previous cases need not be materially or fundamentally similar to the situation in question." *Bull*, 595 F.3d at 1003. A court in this circuit first looks to binding precedent from the Supreme Court or the Ninth Circuit. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004). After that, "in the absence of binding precedent, [courts] look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Id.* (quotation marks omitted).

The plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). When considering whether qualified immunity applies, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins*, 710 F.3d at 1064.

Eaton argues that the right to the flow of inmate communications absent a legitimate penological interest to stop that flow was well established in July 2020 when his legal envelope was confiscated. Indeed, he contends that Officer Vanderwalker admitted that the confiscation was unlawful but stated that he had to do it based on Ms. Ridley's email and that Ms. Ridley

admitted she had made a mistake in her email but that she corrected that mistake. In 2020, the law was clearly established that policies interrupting the flow of inmate communications requires a legitimate penological interest. As discussed, Defendants do not argue any legitimate penological interest for banning postage prepaid legal envelopes preaddressed to counsel. Defendants argue the legitimate penological interest for banning blank stamped envelopes, but that was not the policy in Ms. Ridley's first email; that was the policy in her second, corrected email but that is not challenged in this lawsuit. Accordingly, Defendants are not entitled to qualified immunity.

## CONCLUSION

The Court GRANTS IN PART Defendants' Motion for Summary Judgment, ECF 85. The Court GRANTS summary judgment against Plaintiff's claim for compensatory damages. Plaintiff may seek nominal damages, equitable relief, and attorney's fees, if appropriate.

**IT IS SO ORDERED.**

DATED this 24th day of April, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge